**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KENNETH SAUNDERS, JR.,                              Case No. 1:10-cv-836

        Plaintiff,                              Barrett, J.
                                                    Bowman, M.J.

    v.

BARACK OBAMA, et al.,

        Defendants.


**REPORT AND RECOMMENDATION**

**I. Procedural Background and Pending Motions**

On November 29, 2010, Plaintiff Kenneth Saunders, Jr., who presently resides in California, filed a *pro se* complaint alleging that twenty-one defendants, including the President of the United States, the Governor of the State of Ohio, other elected officials, state court judges and courts, several Fairfield County agencies, and the Fairfield County Sheriff's Office, as well as individual attorneys, violated his constitutional rights in connection with child support proceedings that arose out of his 1981 divorce. Although Plaintiff initially sought leave to proceed *in forma pauperis*, his application was denied because he refused to submit the required financial information. (Docs. 6, 9). Based upon the incomplete application, the Court denied Plaintiff leave to proceed *in forma pauperis* without screening Plaintiff's complaint for frivolousness under 28 U.S.C. §1915(e).

Eventually, on April 25, 2011, Plaintiff paid the full filing fee. Although any *pro se* litigant's complaint (regardless of whether they proceed *in forma pauperis*) may be screened for frivolousness under the authority of *Apple v. Glenn*, 183 F.3d 477, 479 (6th

Cir. 1999), the Court did not closely examine Plaintiff's complaint at the time he paid his filing fee.  Instead, summons forms were issued to Plaintiff and he attempted to achieve service on the Defendants, with varied results.

Based in part on those varied results, all but the Federal Defendants[1] have now filed motions to dismiss Plaintiff's claims against them.  On August 31, 2011, Defendants Ohio Governor John R. Kasich, Ohio Attorney General Mike DeWine, Ohio State Representative Gerald L. Stelbelton, and Ohio State Senator Tim Schaffer (hereinafter "State Officials") moved to dismiss pursuant to Rule 12(b)(1) for lack of jurisdiction, pursuant to Rule 12(b)(5) for insufficient service of process, and pursuant to Rule 12(b)(6) for failure to state a claim.  (Doc. 28).  Soon thereafter, the Ohio Department of Job and Family Services ("ODJFS"), who is not a named Defendant on the face of the complaint, but was served with a summons form (Doc. 21-1),[2] moved to dismiss Plaintiff's claims on the same grounds.  (Doc. 29).  On September 30, 2011, Defendants Honorable Chris Martin, Honorable Judge Kathy Mowry, and Honorable Sewall Farrell Jackson (hereinafter "State Judges") also moved to dismiss, citing the same provisions of Rule 12.  (Doc. 34). Defendants Fairfield County, Fairfield County CSEA, Fairfield County Courts, Fairfield County Sheriff, and Christopher Veidt (hereinafter "Fairfield Defendants"), have likewise moved to dismiss based upon Rule 12(b)(5) and 12(b)(6).  (Doc. 35).  Last, individual Defendant Charles Gordon (an attorney) filed a *pro se* motion to dismiss, also citing Rule 12(b)(5) and 12(b)(6).  (*See* Docs. 36, 38).       On January 4, 2012, the United States

---

[1]The Federal Defendants have filed a Suggestion of Improper Service.  (Doc. 45).

[2]Plaintiff mistakenly names the Ohio CSEA instead.

Department of Justice filed a "Suggestion of Improper Service" on behalf of the Federal Defendants, including Secretary of State Hillary Clinton, Secretary of Homeland Security Janet Napolitano, and Secretary of the U.S. Department of Health and Human Services Kathleen Sebelius.  (Doc. 45).  Although the Suggestion of Improper Service does not specifically reference President Barack Obama and Attorney General Eric Holder, the same defects in service would appear to apply to those Defendants as well.  In turn, Plaintiff has filed both responses to the Defendants' motions and the Suggestion of Improper Service, and his own "motion that the Court deny all motions of Dismissal, that the Court Deny Immunity, that the Court hear this case, and that the Court Restore the United States Citizenship and all Rights thereof to the Plaintiff."  (Doc. 43).

Pursuant to local practice, this case has been referred to the undersigned magistrate judge for initial review and a Report and Recommendation on all pending dispositive motions.  Based upon that review, I now recommend that all of Defendants' motions to dismiss be **granted**, that Plaintiff's motion be **denied**, and that this case be dismissed for the reasons stated in Defendants' motions and upon this Court's additional authority under *Apple v. Glenn*, *supra.*

**II.  Summary of Plaintiff's Complaint**

Plaintiff's complaint alleges that he is "seeking an audience to file a civil suit" against the referenced Defendants:

> For false charges of; making threats domestic terrorism against a US installation (court house).  For the Charges of; negligence, Denial of due process, fraud, illegal seizure of assets, illegal seizure of taxes, illegal seizure of personal documents, extortion, misrepresentations and theft of citizenship.

(Doc. 19 at 2-3)(grammatical errors uncorrected).  Plaintiff's claims appear to arise out of two distinct but related events: (1) child support proceedings that occurred in 2002 and 2003; and (2) a May 2008 incident that occurred at the Fairfield County Courthouse.

In 1981, Plaintiff was divorced in the State of Ohio.  (Doc. 19 at 3).  Plaintiff generally alleges that he "fulfilled all of the obligations that was [sic] required of me" following his divorce.[3]  Despite this contention, Plaintiff alleges that in November of 2002 (Doc. 19 at 6), his ex-wife became angry when she saw a picture of him with his new wife and a child variously identified by Plaintiff as "our little cousin" or a "nephew." (*See* Doc. 40 at 3).  Plaintiff alleges that his ex-wife "filed an action [for non-support] against me in December 2002" in order to obtain additional child support money, even though Plaintiff's children were ages 25 and 22 at the time.  (Doc. 19 at 6).

Plaintiff alleges that he received notice of an investigative hearing being held in Fairfield County, Ohio on "the evening of the time of the hearing" - too late in time for him to travel from California to attend.  (*Id*.).  At some later point in time, Plaintiff received "a letter from the CSEA and the court that I was found guilty of non-pay all and that I owe $58,000 USD in non-support," a figure that "is now currently at $96,000.00+ USD, due to costs and interest rates compounded."  (Doc. 19 at 4).  Plaintiff alleges that as a result of this child support/alimony debt, which he contends he was not permitted to contest in person at a court hearing, his "bank accounts, investments, funds, retirement monies have all been confiscated," as well as one-half of his "disability" payment.  (*Id.*).  Plaintiff alleges

---

[3]Plaintiff does not specifically allege in his Complaint that he paid all support that was due, but some of Plaintiff's responsive memoranda refer to a total seizure of monies by Fairfield and/or other authorities that allegedly exceeds $130,750.00, an amount in excess of Plaintiff's total obligation.  (Doc. 39 at 7).

he is unable to secure employment, and that the Internal Revenue Service "confiscates Taxes from my wife of eight (8) years" including "[s]timulous checks belonging to my wife." (Doc. 19 at 5).

At an unspecified point in time, Plaintiff alleges that he hired an attorney, Mr. Henniger, who misrepresented him.   Plaintiff alleges that "[t]here have been numerous non-verbal hearings[4] between Judge Jackson, Attny Henniger and K. Mowry of CSEA that I was not allowed to attend.  At that time agreements were made and signed on my behalf and without my knowledge." (*Id.*).  The referenced "agreements" apparently were signed during the December 2002 non-support proceedings.

The second event of which Plaintiff complains occurred in May of 2008, when Plaintiff alleges that he traveled to the Fairfield County Courthouse to "re-file a complaint and appeal to be heard in court...." (Doc. 19 at 3).  In the context of the Complaint, this second event appears to be related to the prior non-support proceedings to the extent that Plaintiff's complaint/appeal may have sought to challenge anew the 2003 non-support determination.   In any event, in May of 2008, Plaintiff alleges that the "Fairfield County Sheriffs [sic] Deputy told me that I was being detained because I had phoned in a Bomb Threat to the Court House three weeks prior." (*Id.*).  Plaintiff alleges that at one point, a Fairfield deputy sheriff pulled a gun on Plaintiff and that Fairfield authorities confiscated Plaintiff's identification, although they subsequently returned his documents and ordered him to leave the courthouse.  Plaintiff made complaints about the incident to the Fairfield

---

[4]It remains unclear what Plaintiff intends by the reference to "non-verbal hearings" held before Judge Jackson, Plaintiff's attorney and counsel for CSEA, but the precise meaning is irrelevant to disposition of the pending motions.

County Sheriff and to State Representative Tim Shafer, but did not obtain any relief. According to the Complaint, "[t]he [Fairfield County] Court shortly thereafter returned monies from that last appeal filing, stating that I could no longer file any further cases." (Doc. 19 at 4).

Although no date is specified, Plaintiff also alleges in his Complaint that the State Department wrongfully denied him renewal of his passport, which prohibits him from traveling "freely with my foreign born wife to visit family and friends" and to "conduct business" abroad. Plaintiff alleges that there is a "pending seizure of my personal identification, drivers license, social security cards and voting rights" as of November 2010. (Doc. 19 at 5).

Plaintiff refers to other, apparently related litigation, presumably filed in state court. "I have filed lawsuits on my own behalf 'self-representation'....The results of my attempts were non-oral hearings and dismissal of claims." (Doc. 19 at 5). In fact, attached to the Complaint filed in this Court is a federal form used to file a "Complaint of Judicial misconduct or Disability," which Plaintiff has completed in an apparent attempt to file a complaint against Fairfield County Court of Common Pleas Judges Jackson and Martin.[5] Plaintiff alleges that complaints to his local representative, his state representative, Ohio Attorney General and Governor have been "ignored." (*Id.*). He alleges that "[t]he US Government and Courts all have claimed, No jurisdiction to any of these matters." (*Id.*)(punctuation original).

As relief for his claims, Plaintiff seeks "the immediate return of all personal

---

[5]Plaintiff states on the form that he has previously filed lawsuits against the same judicial officers, but that "all attempts have been dismissed or ignored." (Doc. 1-3 at 2).

6

documents," "the return of all assets, interest and taxes," and "with a proper hearing...compensation for all damages" including "documented written clearance of my person for the record," and "clearance of any such threats against any installation in the USA." (Doc. 19 at 8).  Aside from the return of documents and "clearance" of various records, Plaintiff most clearly seeks monetary damages, including (according to the civil cover sheet), "$2 mill USD p/Yr - 2002."  (Doc. 1-4).

### III. Analysis of Pending Motions

### A. Motions to Dismiss (Docs. 28, 29, 34, 35, 36, 38)

The State Officials, ODJFS, and the State Judges all have moved for dismissal based upon a lack of federal jurisdiction, for failure to state a claim, and for insufficient service of process.  The Fairfield Defendants and individual Defendant Gordon have separately moved to dismiss for failure to state a claim and for insufficient service of process.  Counsel for the Federal Defendants also has filed a Suggestion of Insufficient Service.

### 1.  Lack of Subject Matter Jurisdiction

The State Officials and Defendant ODJFS argue persuasively that Plaintiff's claims against them should be dismissed for lack of subject matter jurisdiction, pursuant to the Eleventh Amendment.  The motion of the State Judges urges this Court to decline jurisdiction for other reasons.

Plaintiff bears the burden of proving subject matter jurisdiction.  *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2006) (citing *United States ex rel. McKenzie v. BellSouth Telecommunications*, Inc., 123 F.3d 935, 938 (6th Cir. 1997)).  No

7

particular basis for jurisdiction is stated in the Complaint itself.  However, on the civil cover sheet attached to the Complaint, Plaintiff asserts that jurisdiction exists on the basis that the United States Government is a named Defendant.  *See* 28 U.S.C. §1346(b).  Plaintiff has also checked a box suggesting that "this is a class action" under Fed. R. Civ. P. 23, although aside from the box being checked, this Court can discern no allegations that could remotely suggest the existence of a class action.  (Doc. 1-4).  Construing Plaintiff's *pro se* Complaint liberally, Plaintiff presents the following claims: (1) false charges of making threats of domestic terrorism; (2) denial of due process and unspecified "constitutional rights" and "civil rights"; (3) fraud; (4) illegal seizure of assets; (5) illegal seizure of taxes; (6) illegal seizure of personal documents; (7) extortion; (8) misrepresentation by counsel; (9) theft of citizenship; (10) negligence; (11) illegal signing of documents by unspecified persons; and (12) illegal confiscation of personal documents and identification, including "[s]eizure of my US Citizenship."

### 1.  Eleventh Amendment Bar to Suit Against State Officials, ODJFS

The most obvious source of this Court's jurisdiction over claims brought against the State Officials and ODJFS would be under 28 U.S.C. §1331 (federal question), to the extent that Plaintiff's claims are construed as alleging violation of his constitutional rights under 42 U.S.C. §1983.  However, under § 1983, the plaintiff must show that each defendant acted under color of state law and violated the plaintiff's civil rights. *Smith v. Williams-Ash,* 520 F.3d 596, 599 (6th Cir 2008).  When suing individual defendants, a plaintiff must "set forth clearly in [his] pleadings that [he is] suing the state defendants in their individual capacity for damages, not simply their capacity as state officials." *Shepherd*

*v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002).  One reason for that requirement is that the State of Ohio (or individuals named in their official capacities) may be entitled to sovereign immunity for any claim for monetary damages.  *See generally Will v. Michigan Dep't of State Police,* 109 S. Ct. 2304 (1989).

Here, the State Officials persuasively argue that the Eleventh Amendment bars Plaintiff's suit against them, because it appears from the Complaint that Plaintiff seeks monetary damages against each official only in his official capacity.  Likewise, ODJFS is entitled to Eleventh Amendment immunity because it is a state agency.  *See Cady v. Arenac County*, 574 F.3d 334, 352 (6th Cir. 2009)(Eleventh Amendment immunity bars §1983 suits against a state, its agencies, and its officials sued in their official capacities).  Although Plaintiff also appears to request the return of unspecified documents and tax refunds, those requests appear directed to the Federal Defendants and not to the State Officials.  In any event, all of the relief sought is retrospective relief that clearly is barred by the Eleventh Amendment as to the State entities and the ODJFS.

In addition, Plaintiff's common law claims against the State Officials and ODJFS for negligence, extortion, theft, misrepresentation and fraud all arise under state law, if at all, and therefore also are subject to dismissal for lack of jurisdiction.  When the Eleventh Amendment bars a litigant's federal claims, federal courts will not exercise jurisdiction over pendent state law claims against state officials sued in their official capacities.  *See Pennhurst State School & Hosp. v. Halderman* (*Pennhurst II*), 465 U.S. 89, 120 (1984); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520-21 (6th Cir. 2007).  Likewise, a federal court cannot exercise supplemental jurisdiction over the state law claims pursuant

9

to 28 U.S.C. §1367.  *See Raygor v. Regents of University of Minn.*, 534 U.S. 533, 540-542 (2002)(discussing limitations of supplemental jurisdiction, additional citations omitted). Plaintiff seeks no prospective relief from the State defendants; therefore, the limited exception to Eleventh Amendment immunity provided by *Ex Parte Young*, 209 U.S. 123 (1908), has no application to this case.

### 2.  The *Rooker-Feldman* Doctrine Bars Relief Against State Judges

The State Judges argue that this Court lacks jurisdiction over Plaintiff's claims against the Judges for a different but equally persuasive reason, under the *Rooker-Feldman* doctrine. The heart of Plaintiff's claims against the State Judges challenges the award of child support and/or alimony, which would be an improper invocation of federal jurisdiction.  *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973)(dismissing lawsuit for failure to state a claim where plaintiff filed suit against thirty-six defendants, including State and County officials and private individuals, over intrafamily custody battle); *see generally* 28 U.S.C. §1257; *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).

### 3.  No Federal Jurisdiction Over Child Support and Alimony Awards

Clearly, a significant portion of Plaintiff's complaint pertains to domestic relations issues, which are within the exclusive jurisdiction of the states and fall outside the scope of federal jurisdiction.  In general, Ohio juvenile courts retain exclusive jurisdiction over matters involving child custody and support.  More than a century ago, the United States Supreme Court proclaimed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the

United States." *In re Burrus*, 10 S.Ct. 850, 853 (1890).  Thus, under the *Burrus* abstention doctrine, federal courts have universally declined to exercise jurisdiction in domestic relations cases in which a complaint contains only conclusory assertions that a plaintiff is entitled to relief because of the state's constitutional violations, where those assertions are "a mere pretense and the suit is actually concerned with domestic relations issues." *Danforth v. Celebrezze*, 76 Fed. App'x 615, 616 (6th Cir. 2002).

Although it is possible for federal jurisdiction to attach where a litigant presents an *independent* claim that challenges the constitutionality of a state official's action, *see Pittman v. Cuyahoga County Dep't of Children and Family Servs.*, 241 Fed. App'x 285, 287-290 (6th Cir. 2007), multiple reasons counsel against the assumption of federal jurisdiction in this case.  Numerous deficiencies in Plaintiff's complaint, as discussed below, present an insurmountable barrier to jurisdiction.  When similar claims have been presented, other federal courts have declined to exercise jurisdiction. *See, e.g., Aitken v. Child Support Enforcement Agency*, 2007 WL 963278 (N.D. Ohio, March 28, 2007)(dismissing under 28 U.S.C. §1915(e) plaintiff's due process claim based upon allegation that CSEA improperly awarded child support in his absence, when he could not attend hearing).

In short, this Court lacks subject matter jurisdiction over the majority of Plaintiff's claims because they fall exclusively within the jurisdiction of the state courts.  Plaintiff's conclusory references to violations of his civil rights are not sufficient—even if they did not merit dismissal under Fed. R. Civ. P. 12(b)(6)—to grant federal jurisdiction.  This Court cannot grant the relief Plaintiff seeks -  alteration of the state court's alimony and child

support award. *See generally Elk Grove United School Dist. v. Newdow,* 124 S.Ct. 2301, 2309 (2004)(Despite "rare instances in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue,... in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts."); *Ankenbrandt v. Richards*, 112 S. Ct. 2206 (1992)(narrowing the domestic relations exception, but affirming its continuing viability). Therefore, all claims that relate to or challenge the non-support award should be dismissed for lack of subject matter jurisdiction. *Accord Wilder v. Swann*, 2011 WL 4860041 *4 (E.D. Tenn. Oct. 13, 2011)(dismissing *pro se* plaintiff's civil rights case for lack of subject matter jurisdiction, where it was clear that claims arose solely out of divorce and custody proceedings); *McGhan v. Kalkaska County Dep't of Human Servs.*, 2009 WL 2170151 *9 (W.D. Mich. July 20, 2009)("the court lacks jurisdiction over any claim by plaintiff that she suffered injuries resulting from the decisions made by Michigan's courts in child custody proceedings.").

In addition, Plaintiff names his ex-wife, Etna F. Puryear, as a Defendant in this case. Other than alleging that she initiated support hearings against him, Plaintiff has failed to allege any facts that could give rise to a federal claim against her. Moreover, it does not appear that any summons was ever issued to Ms. Puryear, and she has not appeared in the case.

### B. Failure to State a Claim

#### 1. No Claims Against State Officials or ODJFS

To the extent that federal jurisdiction may be assumed over any of Plaintiff's claims

against the State Officials or ODJFS, those Defendants' motions to dismiss for failure to state a claim nevertheless should be granted. As previously stated, the Eleventh Amendment bars any claim for monetary damages against the State Officials or Defendant ODJFS.

The essence of many of Plaintiff's allegations is that various State Defendants (as well as other Defendants) ignored his prior complaints to them or to their staff. However, an official cannot be held liable under 42 U.S.C. §1983 based upon his failure to act. *See McVicker v. Hartfield*, No. 2:08-cv-1110, 2009 WL 2431257 *7 (S.D. Ohio, Aug. 6, 2009), (failure of Governor to stop plaintiff's alleged mistreatment by Ohio Department of Jobs and Family Services not actionable, citing *Lillard v. Shelby Cty Bd. Of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Plaintiff's allegations fail to state a claim for relief against any Defendant, including but not limited to the State Defendants, because no factual allegations establish the basic elements of any claim.

### 2. Claims Against State Judges

The allegations against the State Judges are equally insufficient. Other than naming Judge Martin in the caption of the complaint, the complaint contains no allegations against him. Although the names of Judge Jackson and Judge Mowry are mentioned in the body of the complaint, allegations of "numerous non-verbal hearings" involving Judges Jackson and Mowry (whether in her role as an attorney or as a judge) and Plaintiff's attorney simply do not state any possible claim. In addition to the lack of factual support for any conceivable claim, Judge Jackson is absolutely immune for money damages for any conduct undertaken in his judicial role. *See Stump v. Sparkman*, 435 U.S. 349, 362 (1978). The same result occurs with respect to Judge Mowry, to the extent that Plaintiff's

allegation refers to her judicial role.  To the extent that Plaintiff instead seeks money damages against Judge Mowry for her alleged role as an attorney for the Fairfield Child Support Enforcement Agency (CSEA), Ohio law grants her qualified immunity for any acts performed on behalf of CSEA during the child support proceedings.  *See Darrow v. Zigan*, 2009 WL 1278385 (Ohio App. 4th Dist., May 1, 2009).

### 3.  Failure to State a Claim Against Defendant Gordon

Plaintiff's allegations against Defendant Charles E. Gordon are also subject to dismissal for failure to state a claim.  The only mention of the Defendant appears in the caption, where he is identified as an attorney for the CSEA.  As Defendant Gordon explains in his motion to dismiss, at no time has he been employed by the Fairfield CSEA.[6] (Docs. 36, 38).  Even if Defendant Gordon had been employed by CSEA, he, like Judge Mowry, would be entitled to qualified immunity for that work.

### 4.  Fairfield County Defendants

Plaintiff's allegations against the Fairfield Defendants likewise are subject to dismissal for failure to state a claim.  Most of Plaintiff's claims against this set of Defendants, including Defendant Fairfield County, the Fairfield County CSEA, the Fairfield County Courts, and Christopher Veidt, stem from the 2002-2003 non-support proceedings and what Plaintiff views as an improper modification of his child support obligations. Plaintiff alleges generally that he complained by telephone to Christopher Viedt, described as a Fairfield legal aide, and that he made additional complaints to a variety of "CSEA agents by phone" but that his complaints brought him no relief, because he was "either

---

[6]Plaintiff alleges in a responsive memorandum that Defendant Gordon was his ex-wife's court appointed attorney in the 2002-2003 non-support proceedings.  (Doc. 40 at 4).

14

threatened or hung up on or both."

The Fairfield Defendants first briefly argue that the Fairfield CSEA is entitled to dismissal because it is unclear from the Complaint whether Plaintiff's allegations refer to the Fairfield CSEA or the Ohio CSEA, the latter of which Plaintiff is presumed to have intended to be the ODJFS.  However, in part because ODJFS is entitled to Eleventh Amendment immunity, and in part based on the nature of the allegations, this Court will construe Plaintiff's allegations as pertaining to the Fairfield CSEA.

While the Court declines to recommend dismissal of the Fairfield CSEA based upon the ambiguity in the Complaint concerning whether Plaintiff is referring to the County or State entity, the Court agrees with Defendants that Plaintiff's allegations as a whole fail to state any federal claim against Defendant Fairfield County, the Fairfield County CSEA, the Fairfield County Courts, and Christopher Veidt.   As previously discussed, the allegations against those particular Defendants are limited in focus to the 2002-2003 non-support proceedings, which are a state matter, and thus fail to state any federal claim cognizable in this Court.

In addition to allegations relating to the 2002-2003 non-support proceedings, Plaintiff presents separate allegations against the Fairfield County Sheriff's Department. He alleges that, in May of 2008, two deputies drew a gun on him and threatened him, and asked him to leave the Fairfield County Courthouse.  (Doc. 19 at 3).  Although the Fairfield Defendants generally argue that no claim is stated because the deputies were "within their powers to ask individuals to leave the courthouse," (Doc. 35 at 5), Plaintiff's claim that he was directed to leave the courthouse without cause, and at one point at gunpoint, can be construed as alleging a violation of Plaintiff's constitutional rights.  However, as will be

15

discussed below, this claim is also barred by the statute of limitations.

### 5. Limitations Bar

Defendants correctly assert that any constitutional claim arising out of the May 2008 incident would be barred by the statute of limitations applicable to claims brought under 42 U.S.C. §1983.  The statute of limitations for claims arising under 42 U.S.C. §1983 in Ohio is two years.  *See* Ohio Rev. Code Ann 2305.10; *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).  Plaintiff did not file his motion to proceed *in forma pauperis* until November 2010 - more than two years after the May 2008 incident occurred.

For the same reasons, any and all claims pertaining to the imposition of the $96,000 non-support judgment against Plaintiff in 2003 also would be barred by the applicable statute of limitations. If Plaintiff's complaint had been subject to screening for frivolousness under 28 U.S.C. §1915(e), any conduct alleged to have occurred more than two years prior to the date the complaint was filed would have been subject to *sua sponte* dismissal by this Court.  *See Barnett v. Luttrell,* 414 Fed. App'x 784, 787 (6th Cir. 2011)(refusing to review *sua sponte* dismissal of time-barred claims); *Ashiegbu v. Kim*, 145 F.3d 1329, 1998 WL 211796 (Table, 6th Cir. April 24, 1998), *cert. denied*, 525 U.S. 857 (§1915(e) *sua sponte* dismissal is appropriate where claim is barred by statute of limitations).  No different result should occur here, where Plaintiff's claims are not only implausible on other grounds, but are facially time-barred. *See generally*, *Apple v. Glenn*, 183 F.3d 477.

### 6. Additional Grounds for Dismissal Under *Iqbal* and *Apple v. Glenn*

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  However, in recent years, the Supreme Court has brought greater focus

to that pleading standard, holding first in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007) that the "famous" no-set-of-facts formulation "has earned its retirement" and instituting a new standard that a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face" *Id.* at 1974.  In *Ashcraft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court explained: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Under *Iqbal,* a trial court evaluating a complaint must cipher out "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" from legal conclusions that are supported by factual allegations.  *Id.*  The first step is to identify the elements of the plaintiff's claim, in order to determine which allegations are mere legal conclusions, as opposed to factual allegations entitled to the "assumption of truth." *Id.* at 1951 ("We begin...by identifying the allegations in the complaint that are not entitled to the assumption of truth").  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1965.  The complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 406 (6th Cir. 1998)(internal quotation marks and additional citation omitted).

Virtually none of Plaintiff's allegations against any of the named Defendants (with the possible exception of the time-barred claims against the Fairfield Sheriff's Department) survive the *Twombly* and *Iqbal* pleading standards.  Plaintiff has failed to state any claim against any Defendant, even when all allegations are construed in the light most favorable

17

to Plaintiff.  *Pro se* complaints are held to a less rigorous standard than those drafted by attorneys, but the court is not required to discover or create a claim that is not pleaded. *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011); *see also Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975).  A plaintiff is still required to plead more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.

In this case, most of Plaintiff's claims are similar to the complaints of the plaintiff in *Apple v. Glenn*, 183 F.3d 477, wherein another would-be plaintiff paid the full filing fee in order to bring suit against Senator John Glenn, (then) Chief Justice William Rehnquist, and other top government officials "claiming that the defendants violated his First Amendment right to petition the government because they did not answer his many letters or take the action requested in those letters." *Id.*, at 478-479.   In *Apple v. Glenn*, the Sixth Circuit affirmed the district court's authority to *sua sponte* dismiss a non-prisoner *pro se* complaint for lack of jurisdiction "at any time" where the filing fee has been made, and without permitting the plaintiff an opportunity to amend, "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open for discussion." *Id.* at 479.   In this case, the allegations presented by Plaintiff are so unsubstantial as to fail to state a claim.  To the extent that the allegations are liberally read (in as coherent a matter as possible) they either concern matters that are plainly barred by the applicable statute of limitations, or matters over which this Court has no jurisdiction. *Accord McLaughlin v. Cotner*, 193 F.3d 410 (6th Cir. 1999)(affirming *sua sponte* dismissal of complaint involving domestic relations dispute for lack of subject matter jurisdiction).

### C. Failure of Service of Process

#### 1. All Defendants

Virtually all but the Federal Defendants additionally seek dismissal based upon defects in Plaintiff's service of process.  Although Plaintiff proceeds *pro se*, this Court previously warned him that he is responsible for complying with all applicable rules of civil procedure.  In a Memorandum Order filed on July 12, 2011, the Court specifically noted that Plaintiff's complaint was deemed filed on April 25, 2011, but that "no defendant has yet appeared in this case."  The Court's order further noted that the record remained "unclear" as to whether any of the defendants

> have yet been properly served with [a] summons and a copy of the complaint, an obligation that is Plaintiff's to fulfill.  *See generally* Rule 4(m)(requiring service of process within 120 days after the complaint is filed).

(Doc. 18 at 2).  In short, Plaintiff was specifically warned by the Court that he was required to "properly" serve each named Defendant, within 120 days of April 25, 2011, with both a completed summons form *and* a copy of his complaint.

Plaintiff did not timely perfect service on any Defendant.  As represented by the Defendants in their multiple motions to dismiss, Plaintiff attempted service but his attempts fell outside of the allowable 120 day time period.  In addition, Plaintiff's service was ineffective because Plaintiff failed to include a copy of his complaint with the summons forms that he attempted to serve on some of the Defendants.  Various Defendants present additional defects in service, (*see, e.g.*, Docs. 28, 29, 34, 35, 36), but considering Plaintiff's *pro se* status and the multiple reasons for dismissal of Plaintiff's claims on other grounds, the Court finds it unnecessary to address those arguments at length.

Suffice it to say that Plaintiff's service also was defective under Local Rule 4.2(a),

19

to the extent that a plaintiff who seeks to achieve service through certified mail must prepare the necessary documents and "deliver it to the Clerk who shall cause it to be mailed."  In addition, the person who serves the summons and complaint cannot be a party.  Rule 4(c)(2), Fed. R. Civ. P.  Plaintiff violated both the local and the federal rule of civil procedure when he mailed the summonses himself, via certified mail from California.

Plaintiff argues that he served all summons forms "in accordance to the instructions given by the Clerk of Courts."  (*See, e.g.*, Doc. 39 at 4).  He argues that this Court should not dismiss for failure of service if the Clerk of Court provided "misinformation concerning the method of service."  (*Id*. at 4-5).  Plaintiff contends that he was verbally instructed to mail "only page one of the form AO440" by certified mail "[w]ith no other documentation," and that the Clerk of Court further advised Plaintiff that "the court could not legally issue said documents...[s]ince the plaintiff is defending himself...[and] did pay ...the required amount to the court for the documentation of this case" then the "plaintiff must do so himself by certified mail in a timely manner."  (Doc. 29 at 5).

Plaintiff may well have misunderstood the alleged oral instructions of the Clerk of Court, who is not authorized and in fact strictly prohibited from dispensing legal advice. When a litigant is granted leave to proceed *in forma pauperis*, as Plaintiff originally sought leave to do in this case, the plaintiff is required to provide the Clerk with identifying information including the address of each Defendant, but the Court will assume the responsibility of service on the plaintiff's behalf.  Plaintiffs who do not proceed *in forma pauperis* are not entitled to free service by the Court, but instead remain responsible for perfecting service on their own behalf as indicated in the Court's July 12, 2011 Order. Although it is likely that the Clerk's "instructions" simply repeated this well-understood tenet

20

of procedure and did not in fact provide the Plaintiff with incorrect and improper legal advice, Plaintiff was not entitled to rely on any such advice even if it was provided by an unknown employee of this Court.  The Court's Order clearly explained to Plaintiff that he was required  to "comply with federal and local rules of civil procedure," and emphasized his obligation to perfect timely service under Rule 4 of the Federal Rules of Civil Procedure, an obligation he has failed to fulfill.

As to Defendant L.J. Henninger, there is no evidence that Pliantiff ever served Mr. Henninger.  Therefore, for the reasons set forth above, any claims against Mr. Henninger should be dismissed for failure to serve him.

### 2.  Federal Defendants

The Federal Defendants have not formally entered an appearance or filed a motion to dismiss, but have filed a Suggestion of Improper Service.   It must first be noted that it remains unclear from the Complaint whether Plaintiff has named the President, the Secretary of State, the Secretary of Homeland Security and the Secretary of the U.S. Department of Health and Human Services as individuals sued in their official or individual capacities, or whether he intended for the agencies themselves to be Defendants.

Regardless of the capacity in which Plaintiff intended to sue the Federal Defendants, it is clear that his claims are subject to dismissal based upon his failure to perfect timely service under Rules 4(i) of the Federal Rules of Civil Procedure.  To the extent that Plaintiff intended to sue the Federal Defendants individually in their individual capacities under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), he was required to obtain personal service on each of the Defendants.  *See* Rule 4(i)(3); *Ecclesiastical Order of the Ism of Am., Inc. v. Chasin*, 845

F.2d 116 (6th Cir. 1988).

The United States also must be served separately under Rule 4(i)(1)(A) and (B) of the Federal Rules of Civil Procedure, by delivering a copy of the summons and complaint to the United States Attorney for the district in which the action is filed and by serving the Attorney General of the United States by registered or certified mail.

To the extent that Plaintiff intended to proceed against the various agencies rather than the individually named Defendants, he was required to perfect service under Rule 4(i)(1)(A), (B), and (C) as well as Rule 4(i)(2).  Absent proper service, this Court lacks personal jurisdiction over the Defendants.

Plaintiff argues that the Federal Defendants' failure to file any response "or acknowledgment to the summons issued" bars those Defendants from seeking dismissal of the claims filed against them, since all of the Federal Defendants "were made aware via United States Postage" of Plaintiff's various claims.  (Doc. 43 at 1).  However, a Defendant's actual knowledge of Plaintiff's suit or of claims is irrelevant to the issue of service, which is strictly enforced in the Sixth Circuit.  *See, e.g., Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991).

### IV. Conclusion and Recommendations

For the reasons discussed herein, **IT IS RECOMMENDED THAT:**

1.  Defendants' motions to dismiss (Docs. 28, 29, 34, 35, 36) are **GRANTED** based upon Plaintiff's failure to state a claim against any Defendant, as well as his failure to timely perfect service.  Two of the pending motions to dismiss (Docs. 28, 29) also should be granted because this Court lacks subject matter jurisdiction over the claims asserted against those Defendants;

22

2.  Pursuant to the Court's screening authority under *Apple v. Glenn*, all claims against all Defendants, including claims against the Federal Defendants, should be dismissed for failure to state a claim, and for failure to perfect service;

3.  Plaintiff's motion to deny all of the Defendants' motions, for the Court to deny immunity, to hear the case, and to restore Plaintiff's citizenship and rights (Doc. 43) should itself be **DENIED**; and

4.  As no claims against any Defendant will remain pending if this Report and Recommendation is adopted, this case should be **CLOSED.**


 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KENNETH SAUNDERS, JR.,                           Case No. 1:10-cv-836

        Plaintiff,                                   Barrett, J.
                                                    Bowman, M.J.

    v.

BARACK OBAMA, et al.,

        Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).